RENDERED:  AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1288-ME

S.S.                                                                      APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE JESSICA STONE, JUDGE
                        ACTION NO. 22-AD-500299


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; L.O.S., A
MINOR CHILD; AND M.S.                                                     APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND KAREM, JUDGES.

KAREM, JUDGE:  S.S. ("Mother") appeals from the Jefferson Circuit Court's order terminating her parental rights to L.O.S. ("Child"), born October 19, 2018. After careful review of the record and applicable law, we affirm the circuit court's order terminating Mother's parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2022, the Cabinet for Health and Family Services (the "Cabinet") initiated this action by filing a petition for the involuntary termination of parental rights against Mother and M.S. (hereinafter "Father").[1] The circuit court held a hearing on June 10, 2025, and entered findings of fact, conclusions of law, and a judgment terminating Mother's and Father's parental rights to Child on September 2, 2025.

At the hearing, the Cabinet case worker for the family, Parker Hall ("Hall"), testified that the Cabinet received a referral for this family on April 5, 2021, with concerns of medical neglect. The Cabinet filed a petition on May 5, 2021, alleging Child was being treated for failure to thrive related to his medical condition, eosinophilic esophagitis, and that Mother was refusing to follow medical advice.

At the temporary removal hearing on May 12, 2021, the Jefferson Circuit Court ordered that Child remain in Mother's care. It further ordered Mother to participate in a parenting assessment and mental health evaluation, as well as to attend all medical appointments and follow all medical recommendations for Child.

---

[1] Father did not appeal the circuit court's order or participate in the underlying proceedings in any way.

By late June 2021, Child was still not gaining enough weight to allow for proper brain development. Therefore, Child's medical team wanted to perform another surgery to stretch his esophagus, which would allow Child to swallow food properly. Hall testified that Mother remained opposed to this surgery and wanted a second opinion. On July 6, 2021, the Cabinet filed a petition for emergency custody. The following day, a temporary removal hearing was held, and the circuit court granted custody to the Cabinet based on the testimony from Child's doctor regarding the importance of immediate surgery and Mother's testimony regarding her desire for a second opinion. All prior orders remained the same.

After the adjudication hearing on the dependency, neglect, and abuse action ("DNA"), the circuit court issued detailed findings on July 20, 2022, that Child was medically neglected by Mother. In those findings, the court cited to Mother's testimony that she did not always follow the doctor's guidelines or give Child his medications as required, as well as the testimony regarding the improvements Child made while in the hospital and out of Mother's care.

This Court subsequently affirmed, in a published case, the circuit court's adjudicatory finding of medical neglect on October 13, 2023. *S.S. v. Cabinet for Health and Family Services*, 682 S.W.3d 39, 44 (Ky. App. 2023). On March 8, 2023, Child was committed to the Cabinet, and the Cabinet's case plan recommendations were made orders of the court. The case plan required Mother to

follow the recommendations of the psychological assessment, complete protective parenting classes, complete parenting instruction classes at Home of the Innocents, attend counseling until released, attend Child's medical appointments, and attend supervised visitation as long as compliant with the case plan.

Due to Mother's lack of compliance with the court's remedial orders, the Cabinet suspended Mother's visitation with Child in July 2024. After the Cabinet suspended Mother's supervised visitation, Mother failed to have any contact with the Cabinet until March 12, 2025. Instead of attending Child's medical appointments, Mother testified that she would check Child's MyChart to stay up to date on his medical information.

The circuit court entered an order on September 2, 2025, making extensive findings of fact and terminating Mother's and Father's rights to Child. Mother appealed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Standard of Review

The applicable standard of review in a termination of parental rights proceeding is the "clearly erroneous" standard outlined in Kentucky Rule of Civil Procedure ("CR") 52.01. *M.E.C. v. Commonwealth, Cabinet for Health and Fam. Services*, 254 S.W.3d 846, 850 (Ky. App. 2008). Under that standard, "the

findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings." *W.A. v. Cabinet for Health & Fam. Services, Commonwealth*, 275 S.W.3d. 214, 220 (Ky. App. 2008). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted).

Further, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also C.H. v. Cabinet for Health and Family Services*, 399 S.W.3d 782, 788 (Ky. App. 2013). "Mere doubt as to the correctness of a finding will not justify its reversal, and the appellate courts should not disturb trial court findings that are supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003); *see also Rowland v. Holt*, 70 S.W.2d 5, 9 (Ky. 1934); *B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014) (clear and convincing proof does not necessarily mean uncontradicted proof).

2. **Discussion**

Mother argued at both the trial court level and on appeal that Kentucky Revised Statute ("KRS") 625.090(1)(a)1. is unconstitutional. KRS 625.090(1)(a) requires a finding that a child has been adjudged to be abused or neglected by a court of competent jurisdiction or that the child is found to be an abused or neglected child in the termination action itself. Mother focuses on KRS

625.090(1)(a)1. and argues that the statute is unconstitutional because it allows the circuit court to consider an underlying finding of abuse or neglect that was determined by a lower evidentiary standard.

However, the statute's constitutionality is properly before the court only if the trial court relied solely on the prior finding of abuse or neglect in the underlying proceedings. In the case *sub judice*, the circuit court made an independent finding of abuse or neglect in accordance with KRS 625.090(1)(a)2. Moreover, the trial court did not adopt the evidence or testimony previously taken during the underlying adjudication hearing to render a judgment terminating Mother's parental rights. Rather, the circuit court relied on the testimonial evidence presented at the termination hearing to find Mother abandoned Child, Mother failed to provide for Child's material, emotional, and healthcare needs, and Mother failed to comply with the Court's remedial orders to allow for Child's safe return to her custody. *See P.S. v. Cabinet for Health and Fam. Servs.*, 596 S.W.3d 110, 116 (Ky. App. 2020) ("Mother's actions and failure to comply with the Case Plan are substantial enough, standing alone, to support a finding under each element of KRS 625.090, regardless of the underlying Juvenile Case."). The foregoing was sufficient to satisfy constitutional standards. Because the circuit court in this case did not rely exclusively on a prior finding of neglect or abuse

decided under a lesser evidentiary standard, Mother's argument regarding the constitutionality of KRS 625.090(1)(a) is not properly before us.

Mother further argues on appeal that the circuit court abused its discretion in terminating Mother's parental rights. KRS 625.090 sets forth the requirements that must be met before a court in Kentucky may involuntarily terminate a parent's rights to his or her child. First, as already discussed, the circuit court must determine that Child is abused or neglected or that Child was previously determined to be abused or neglected by a court of competent jurisdiction. KRS 625.090(1)(a)1.-2. Second, the Cabinet must have filed a petition seeking the termination of parental rights under KRS 620.180 or 625.050. KRS 625.090(1)(b). Third, the circuit court must find that termination is in Child's best interests. KRS 625.090(1)(c). Finally, the circuit court must find by clear and convincing evidence the existence of one or more of the eleven grounds (a) through (k) listed in KRS 625.090(2). Even if all these requirements are met, the court may choose in its discretion not to terminate a parent's parental rights if the parent has established by a preponderance of the evidence that the child will not continue to be abused or neglected if returned to the parent. KRS 625.090(5).

In the case before us, the circuit court made the findings required in KRS 625.090 by clear and convincing evidence—specifically including: 1) Child

-7-

being abused or neglected, 2) at least one ground of parental unfitness, and 3) termination being in Child's best interest. Further, based upon our review of the record, substantial evidence supports the circuit court's factual findings on these matters. The circuit court also appropriately considered the factors listed in KRS 625.090(3) for assessing whether termination was in Child's best interest and the existence of a ground for termination.

First, we find no error in the circuit court's determination that Child was abused or neglected as defined in KRS 600.020(1). *See* KRS 625.090(1)(a)1. and 2. A court of competent jurisdiction had already adjudicated that Child was abused or neglected in the underlying DNA case. Further, the circuit court also made an independent finding by clear and convincing evidence that Child was neglected or abused as defined by KRS 600.020(1).

Under KRS 600.020(1), the definition of "abused or neglected child" includes "a child whose health or welfare is harmed or threatened with harm where . . . [h]is or her parent . . . [a]bandons the child." KRS 600.020(1)(a)7. Specifically, the circuit court found the following:

> Hall[] testified that [Mother] [had] failed to visit or otherwise contact [Child] for a period or periods of not less than ninety (90) days in duration. […] [Hall] testified that while [Mother] regularly engaged in supervised visitation early on in the underlying case, supervised visitation was suspended on July 24, 2024[,] for [M]other's consistent non-compliance with services. Upon the suspension of services, [Hall] testified that

[M]other failed thereafter to reengage with services or otherwise become compliant in order to have her supervised visitation reinstated. She further testified that [Mother] has not maintained regular contact with the caseworker during said period or periods to inquire into the well-being of [Child], despite [Hall's] regular attempts at engaging [M]other with services. [Hall] testified that her attempts at making contact with [Mother] went unanswered from July 24, 2024[,] until she saw [M]other at a gas station on March 12, 2025[,] and was able to reach [M]other by phone on that same date and again on April 15, 2025. She stated that [M]other did not inquire into [Child's] well-being from July 24, 2024[,] up to present. Moreover, [Hall] testified that, since [Child] was first removed from parental custody, [Mother] [has] not availed [herself] of the reunification services referred to or provided by the Cabinet or have otherwise failed to make sufficient progress in the court-approved case treatment plan to allow for the safe return of [Child] to parental care.

The foregoing is substantial evidence for the circuit court's finding that Mother had abandoned Child. Therefore, based on our review of the record, the circuit court's finding that Child had previously been adjudicated neglected and remained so based on Mother's lack of full compliance with case plan requirements was supported by substantial evidence and thus not clearly erroneous.

Next, we find no error in the circuit court's findings as to the guidelines contained in KRS 625.090(2). In the present case, the circuit court found the Cabinet proved the existence of KRS 625.090(2)(a), (e), and (g). The statute only requires the court to find one of the grounds under KRS 625.090(2).

-9-

*Commonwealth, Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

The record sufficiently supports the circuit court's determination that the Cabinet proved the existence of at least one ground of parental unfitness by clear and convincing evidence. As we just detailed, the record clearly supports the circuit court's finding of the ground set forth in KRS 625.090(2)(a): "That the parent has abandoned the child for a period of not less than ninety (90) days[.]"

In this case, Mother admitted that her last contact with Child's doctors had been in May or June of 2024. After Mother's visits were suspended, she failed to maintain any contact with the Cabinet or inquire about Child's well-being for a period of eight (8) months. In *C.A.W. v. Cabinet for Health & Family Services, Commonwealth*, 391 S.W.3d 400, 405 (Ky. App. 2013), this Court upheld a finding of abandonment where supervised visitation was suspended due to the parent's noncompliance with court orders and the parents had no other contact with the children after the court suspended the visitation. In the present case, Mother similarly has had no other contact with Child since visitation was suspended.

Therefore, the circuit court correctly found that Mother has failed to remedy any of the concerns that were present at the time of Child's removal. Moreover, there was no evidence that Mother was capable of achieving stability now or in the immediately foreseeable future in order to appropriately care for

Child. *See M.E.C.*, 254 S.W.3d at 855 ("We know age is an important consideration and that more significant and quicker progress must be demonstrated when younger children are the subject of the termination of parental rights."). Based on the above substantial evidence, this Court affirms the Jefferson Circuit Court's findings under KRS 625.090(2).[2]

Lastly, the circuit court stated that it had considered each factor in KRS 625.090(3) and found it in Child's best interests for Mother's parental rights to be terminated. Although the standard of review in termination cases is a "clearly erroneous" standard, when reviewing a circuit court's determination of a child's best interest, we review for an abuse of discretion. *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009) (citations omitted). "Absent a showing that a decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a [circuit] court's determination on the issue will not be an abuse of discretion and will be sustained." *D.J.D. v. Cabinet for Health and Family Servs.*, 350 S.W.3d 833, 837 (Ky. App. 2011) (citation omitted).

Indeed, the circuit court discussed the factors in KRS 625.090(3) extensively. First, acts of abuse or neglect toward "any child" in the family existed in this case, as Child was previously adjudicated as abused and neglected. KRS

---

[2] The circuit court also concluded that other grounds of parental unfitness set forth in KRS 625.090(2) were established. However, as previously discussed, we need not address these other grounds since only one KRS 625.090(2) ground is required to support termination.

625.090(3)(b) and *S.S.*, 682 S.W.3d at 44. Moreover, as previously discussed, the court determined that the Cabinet had "presented clear and convincing evidence, through the testimony of [Hall], that [Child] has been abused or neglected within the meaning of KRS 600.020(1) as a result of being abandoned for a period of not less than ninety (90) days by [Mother] and by [Child] not having his material, emotional and healthcare needs met by [Mother]." Additionally, the court found that Child had been "abused or neglected by [Mother's] failure or inability to: comply with this Court's remedial orders and the Cabinet's court-approved case treatment plan for safe return to parental custody resulting in child remaining in custody of the Cabinet; and do what is necessary to materially support [Child]." The foregoing findings are supported by substantial evidence.

Additionally, the court found that, after Child's removal from parental custody, the Cabinet made reasonable efforts to reunite Child with Mother by offering multiple services. KRS 625.090(3)(c)1. Hall testified that the services offered to Mother included a mental health assessment, psychological assessment, parenting education, protective parenting program, supervised visitation, and ongoing communication with the caseworker. The services offered in this case are similar to those in *C.A.W.*, 391 S.W.3d at 405, where this Court found that the Cabinet made reasonable efforts to reunite the children with their parents.

Therefore, the circuit court properly found by clear and convincing evidence that the Cabinet provided reasonable efforts in this case.

Next, the court found that Mother's efforts and adjustments to her circumstances had been inadequate to determine that reunification is in Child's best interest. KRS 625.090(3)(d). The evidence demonstrated that Mother's participation in services had not resulted in meaningful lifestyle changes so that Child would be safe if placed back in Mother's care. Moreover, our Supreme Court has stated that showing up to a case plan's required services is "the minimal threshold" step. *R.M. v. Cabinet for Health and Fam. Servs.*, 620 S.W.3d 32, 42 (Ky. 2021). A parent must also demonstrate the ability to put those skills into practice to support reunification. *Id*. Mother's inability to accept responsibility for Child's medical neglect or adequately participate in Child's medical appointments demonstrated her lack of insight and does not make it in Child's best interest to return to her home within a reasonable period of time. Further, Mother has failed to demonstrate any change in her protective capacity to warrant reunification with Child. Therefore, after four (4) years in foster care, the circuit court appropriately concluded that Child could not be reunified within a reasonable period of time and that termination was in Child's best interest. This factor weighs in favor of termination.

Additionally, the court found that Child's welfare would continue to improve upon a termination of parental rights. KRS 625.090(3)(e). Child has been placed in the same foster home since September 2021. In that home, Child has made progress in his developmental delays, and the foster family has ensured Child receives appropriate medical care and attention. Hall testified Child is thriving in his placement and the foster family is willing to adopt. This was confirmed by Child's foster mother. KRS 625.090(3)(e) identifies such improvements and bonds to the foster family as indications that it is in Child's best interest for a termination of parental rights to occur. *C.A.W.*, 391 S.W.3d at 406. Accordingly, the trial court, within its discretion when determining whether Child's welfare will continue to improve if termination is granted, appropriately considered the stability and permanency offered by the foster home in contrast with Mother's inability to provide for Child's needs.

Lastly, under KRS 625.090(3)(f), a court is required to consider a parent's "payment or . . . failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so." In this case, Mother has failed to financially support Child since his removal. This factor weighs in favor of termination.

Accordingly, the circuit court properly considered each of the relevant best interest factors and found it was in Child's best interest that Mother's parental rights be terminated.

Finally, Mother argues that the circuit court abused its discretion in finding that Child would continue to be neglected if returned to her custody. KRS 625.090(5) affords a parent the opportunity to prove by a preponderance of the evidence that the child will not continue to be abused or neglected if returned to the parent. The statutory language allows the court to exercise its discretion in deciding whether to terminate parental rights. *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 115 (Ky. 2012).

We believe the evidence cited above demonstrates that Mother has failed to meet her burden. While Mother now believes she can care for Child because his condition has improved, the evidence demonstrated that Child's condition only improved as a direct result of the diligence of his foster family. Further, Mother testified she did not know if she could give the court any assurances that she would follow medical advice for Child in the future. Considering this evidence, it was not unreasonable for the circuit court to find that Mother failed to prove by a preponderance of the evidence that Child will not continue to be abused or neglected, considering the lack of any significant change in Mother's circumstances or attitude. Furthermore, the only evidence of Mother's

alleged changed circumstances was her own testimony, which the circuit court, in its role as the fact finder, deemed to lack credibility.

## **CONCLUSION**

For the foregoing reasons, we affirm the Jefferson Circuit Court.


ALL CONCUR.


BRIEF FOR APPELLANT:

Kelsea Denise Hall
Louisville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Leslie M. Laupp
Covington, Kentucky